UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARVEY MAHLER,<br><br>Plaintiff,<br><br>v.<br><br>VITAMIN SHOPPE INDUSTRIES, INC. d/b/a THE VITAMIN SHOPPE,<br><br>Defendant. | Case No. 19-cv-03848<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Harvey Mahler purchased a vitamin supplement manufactured and sold by Defendant Vitamin Shoppe Industries Inc. d/b/a The Vitamin Shoppe. Plaintiff now brings various tort, contract, and deceptive business practice claims against Defendant, asserting that the "Vitamin Shoppe One Daily Men's 50+" (the Vitamin Supplement) contains dangerous levels of heavy metals which made Plaintiff sick. [14]. Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). [16]. For the reasons stated below, this Court denies in part, and grants in part, Defendant's motion to dismiss.

**BACKGROUND**

In June 2017, Plaintiff purchased the Vitamin Supplement from one of Defendant's stores located in Skokie, Illinois. [14] ¶ 31. Plaintiff proceeded to take the daily vitamins as directed on the label. *Id.* ¶ 32. But shortly thereafter Plaintiff

1

began suffering various serious health issues including elevated blood pressure and hypertension, artery olusion, and ulnar neuropathy. *Id.* ¶¶ 33–35. Eventually Plaintiff underwent surgery to place a stent in his renal artery and an electromygophy (EMG) for foot numbness. *Id.* ¶¶ 35–36. Plaintiff further alleges he suffered kidney damage, nerve damage, numbness, burning sensations, and weakness in his hands, among other things. *Id.* ¶ 37. Prior to the onset of these conditions, Plaintiff had no history of "cardiorespiratory events, extremity numbness or pain, cognitive deficiencies, or organ damage." *Id.* ¶ 42.

Plaintiff also alleges his medical providers "indicated his exposure to heavy metal toxins through the Vitamin Supplement as a potential cause for his various medical conditions." *Id.* ¶ 38. Finally, he alleges that independent laboratory results confirm that the Vitamin Supplement contains heavy metal toxins in amounts unsafe for human consumption. *Id.* ¶ 39. For these reasons, Plaintiff claims that ingesting heavy metals contained in the Vitamin Supplement caused his injuries. *Id.* ¶ 41.

**LEGAL STANDARD**

Defendant seeks to dismiss the First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). On a motion to dismiss, this Court must construe the complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts, and draw all reasonable inferences in his favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. This Court is also limited to considering only the "allegations

2

set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive, the complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the factual allegations required to state a plausible claim for relief depend upon the complexity of the case, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *Limestone Dev. Corp. v. Vill. Of Lemont*, 520 F.3d 797, 803–04 (7th Cir. 2008).

## ANALYSIS

I. <u>Plausibility</u>

Defendant primarily argues that the complaint should be dismissed in its entirety because it fails to plausibly allege that Defendant's product caused Plaintiff's injuries. [17] at 4–9. In support of this argument, Defendant asks this Court to take judicial notice of laboratory results attached to its briefing. *Id.* at 6; [17] (Ex. 1).

By way of background, Defendant explains that it received these results from Plaintiff in pre-suit communications. [17] at 6. It further claims these laboratory results are the same laboratory results Plaintiff references in the complaint, [14] ¶ 39, making the results an appropriate subject for judicial notice, [17] at 6; *Williamson*,

714 F.3d at 436. Defendant then goes on to say that the amounts of heavy metal toxins found in the laboratory results are well below the levels the FDA identifies as safe levels, thus Plaintiff cannot plausibly state a claim based upon the Vitamin Supplement. [17] at 8. But this Court cannot merely credit Defendant's assertion that the attached laboratory results are, in fact, the same laboratory results referenced in Plaintiff's complaint. Indeed, it is possible that Plaintiff submitted multiple samples for testing or obtained multiple companies to test the samples producing more than one laboratory result. For this reason, this Court declines Defendant's invitation to use judicial notice to avoid an unresolved question of fact, and instead turns to evaluating the allegations of the complaint.

Turning to the facts alleged, Plaintiff alleges that he purchased the Vitamin Supplement and began taking it as directed on the label. [14] ¶¶ 12, 31. Shortly thereafter, Plaintiff developed a litany of health problems. *Id.* ¶¶ 17, 33–37. Plaintiff alleges that these problems resulted from the Vitamin Supplement which contains heavy metals that can be harmful when ingested, *id.* ¶¶ 13, 15, and that one of his medical providers postulated that Plaintiff's "exposure to heavy metal toxins through the Vitamin Supplement" was a "potential cause for his various medical conditions," *id.* ¶ 38. Plaintiff further supports his connection between taking the Vitamin Supplement and his injuries by alleging that independent laboratory test results show that the Vitamin Supplement contains harmful amounts of heavy metal toxins. *Id.* ¶ 39. He additionally alleges that before taking Defendant's product, he had "no history of cardiorespiratory events, extremity numbness or pain, cognitive

4

deficiencies, or organ damages," *id*. ¶ 42, further raising an inference that his health issues and the heavy metals in the Vitamin Supplement might be related. Finally, Plaintiff alleges that because of the risk for exposure to harmful levels of heavy metal toxins, the Vitamin Supplement is defectively designed and manufactured, as well as contains inadequate warnings. *Id*. ¶ 3. Based upon these allegations, Plaintiff presents "a story that holds together" at this early stage of the proceedings. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Thus, Plaintiff's allegations plausibly establish causation. *Id*. Accordingly, this Court denies Defendant's motion to dismiss based upon plausibility grounds.

II.   Other Pleading Deficiencies

In a footnote, Defendant also raises a variety of specific pleading defects. [17] at 4 n.1. Unlike Defendant's plausibility contention, these arguments fare better.

   *A.   Breach of Express Warranty*

First, Defendant's challenge Plaintiff's breach of express warranty claim. *Id*. It argues the claim must be dismissed because Plaintiff fails to specifically identify the language of the warranties at issue. *Id*.

As relevant here, Plaintiff generally describes the promise or description of the goods that allegedly gave rise to the express warranties:

> Defendant expressly warranted that the Vitamin Supplement ingested by Plaintiff was safe and fit for use by consumers, that it was of merchantable quality, that its side effects were minimal and comparable to other medications used to treat conditions treated by the Vitamin Supplement, that it was adequately tested and fit for its intended use, and that it was as safe or safer than other alternative methods to treat Plaintiff's condition.

5

[14] ¶ 88. Yet these vague statements do not provide Defendant with fair notice of the exact representation for which Plaintiff seeks to hold it accountable. *Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 740 (N.D. Ill. 2015). Without alleging more specifics about the exact representations at issue, Plaintiff's claim cannot proceed as alleged. *Heisner ex rel. Heisner v. Genzyme Corp.*, No. 08-C-593, 2008 WL 2940811, at *9 (N.D. Ill. July 25, 2008) (dismissing express warranty claims alleging that the defendant warranted the product was "safe, effective, fit and proper for its intended use" because the factual content was too "sketchy" to put the defendant on notice). This Court accordingly grants without prejudice Defendant's motion to dismiss Plaintiff's breach of express warranty claim.

B.   *Negligent Misrepresentation*

Defendant next points to Plaintiff's negligent misrepresentation claim. Under Illinois law, negligent misrepresentation claims require the plaintiff to plead, among other things, that the defendant made "a false statement of material fact." *Equity Builders & Contractors, Inc. v. Russell*, 406 F. Supp. 2d 882, 890 (N.D. Ill. 2005) (citing *Roe v. Jewish Children's Bureau of Chi.*, 790 N.E.2d 882, 893 (Ill. 2003)). Much as before though, Plaintiff does not clearly identify the allegedly false statement at issue. [14] ¶ 97. Instead, he generally asserts "Defendant concealed adverse information and provided inaccurate or biased information" that "related to the Vitamin Supplement's safety and effectiveness." *Id.* This generic description is insufficient to lay out a plausible theory of relief. *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 210 F. Supp. 3d 1022, 1040 (S.D. Ill. 2016) (dismissing the plaintiffs'

6

negligent misrepresentation claims when they failed to identify any concrete misrepresentations). For this reason, this Court grants without Defendant's negligent misrepresentation claim.

C.   *Illinois Consumer Fraud and Deceptive Business Practices Act*

Finally, Defendant challenges Plaintiff's claim for relief under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/1. [17] at 4 n.1. To state a deceptive business practices claim under the Act, plaintiffs must identify the specific practice or misrepresentation that deceived them. *Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 832 (N.D. Ill. 2009). This includes identifying "who misrepresented what to whom, when the deception occurred, and how he was deceived." *Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 930 (N.D. Ill. 2015).

Keeping with the theme of his other representation claims, Plaintiff again fails to provide necessary details about Defendant's purported deceptive practices and/or misrepresentations. [14] ¶ 109 (stating "Defendant violated the ICFA by the use of deceptive, false, and misleading misrepresentations or omissions of material fact. . . Defendant communicated, and continues to communicate, the purported benefits and safety of the Vitamin Supplement while failing to disclose the serious and dangerous side effects related to the use of Vitamin Supplement"). Indeed, Plaintiff fails to even state whether the alleged deception at issue stems from a misrepresentation or omission. *Id.* Plaintiff's claim remains analogous to the plaintiffs' claim in *In re Michaels Stores Pin Pad Litigation*. In that case, the plaintiffs alleged the defendant

7

failed "to disclose it had not implemented adequate security measures," but failed to identify any communication by the defendant containing the allegedly defective omission. 830 F. Supp. 2d 518, 525 (N.D. Ill. 2011). Accordingly, the court dismissed the plaintiffs' claim. *Id*. For the same reasons, this Court grants without prejudice Defendant's motion to dismiss Plaintiff's Illinois Consumer Fraud and Deceptive Practices Act claim.

## CONCLUSION

For the reasons stated herein, this Court denies in part and grants in part Defendant's motion to dismiss, [16]. Any amended complaint must be filed on or before Monday, February 10, 2020. This Court also sets a status hearing for Wednesday, February 12, 2020 at 10:15 a.m. in Courtroom 1203. The parties shall come prepared to set case management dates at the next hearing.

Dated: January 27, 2020

Entered:

_____
John Robert Blakey
United States District Judge